**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

PACIFIC RESEARCH GROUP, PTE. LTD.    §
                                     §
       Plaintiff,                    §
                                     §
v.                                   §    Case No. 7:26-cv-134
                                     §
STMICROELECTRONICS N.V., and         §    **JURY TRIAL DEMANDED**
STMIRCROELECTRONICS, INC.,           §
                                     §
       Defendants.                   §

**COMPLAINT FOR PATENT INFRINGEMENT**
**AND DAMAGES AND DEMAND FOR JURY TRIAL**

Plaintiff Pacific Research Group, Pte. Ltd. ("Pacific Research" or "Plaintiff"), by and through its attorneys, files this Complaint for Patent Infringement and Damages against STMicroelectronics N.V. ("STNV") and STMicroelectronics, Inc., ("ST- Inc.") (collectively "Defendants") and alleges as follows:

**NATURE OF THE ACTION**

1.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 271, et seq., to enjoin and obtain damages resulting from Defendants' unauthorized use, sale, and offer to sell in the United States, of products, methods, processes, services and/or systems that infringe Plaintiff's United States patents, as described herein.

2.      Defendants, individually and collectively as a single business entity, manufacture, provide, use, sell, offer for sale, import, and/or distribute infringing products and services, and encourage others to use their products and services in an infringing manner, as set forth herein.

3.      Plaintiff seeks past and future damages and prejudgment and post-judgment interest for Defendants' infringement of the Asserted Patents, as defined below.

1

LEGAL\114527099\3

## THE PARTIES

4.      Pacific Research is the current owner and assignee of the Asserted Patents.

5.      Pacific Research is a company organized under the laws of Singapore with its principal place of business located at 160 Robinson Road, #24-09, SBF Center, Singapore, 068914.

6.      Defendants STMicroelectronics N.V. ("STNV") is a Dutch semiconductor company that owns and includes more than fifty subsidiaries. STNV together with its consolidated subsidiaries is one of the world's largest semiconductor companies with 2025 revenue of $11.8 billion and 2024 revenue of 13.26 billion.[1]

7.      STNV was formed and incorporated in 1987 as a result of the combination of the semiconductor business of SGS-Microelettronica, Inc. (then owned by Società Finanziaria Telefonica (S.T.E.T.), an Italian corporation) and the non-military business of Thomson Semiconducteurs (then owned by the former Thomson-CSF, now Thales, a French corporation). STNV operated as SGS-Thomson Microelectronics N.V. until May 1998, when it changed its name to STMicroelectronics N.V.

8.      STNV completed its initial public offering in December 1994 with simultaneous listings on the Bourse de Paris (now known as Euronext Paris) and the New York Stock Exchange (NYSE: STM). In 1998, STNV also listed its shares on the Borsa Italiana S.p.A. (known as Borsa Italiana).

9.      Upon information and belief, STNV is organized under the laws of The Netherlands with its corporate legal seat in Amsterdam, The Netherlands and [its] head offices at WTC Schiphol Airport, Schiphol Boulevard 265, 1118 BH Schiphol, The Netherlands.[2]

10.      STNV, along with its subsidiaries "designs, develops, manufactures and markets a broad range of products used in a wide variety of applications" including "MEMS technologies for sensors and actuators" among other technologies.[3]

---

[1] STNV 2025 20-F report, Page 58. https://investors.st.com/static-files/1fd3e86c-e7a9-4392-a1d0-b65a7e2fee21
[2] STNV 2025 20-F Report at 33.
[3] STNV 2025 20-F Report at 33.

LEGAL\114527099\3

11.     STNV together with its consolidated subsidiaries "is organized by a combination of country/area coverage and key accounts coverage" with an objective of "boosting demand creation through an enhanced focus on geographical coverage with strong technical expertise, supported in the mass market by [the company's] distribution channel and local initiatives."[4] STNV together with its consolidated subsidiaries "engage distributors … to distribute and promote [the company's] products" [5] throughout the United States and in Texas. These "distributors have a dual role, in that they assist in fulfilling the demand of [the company's] customers by servicing their orders, while also supporting the creation of product demand and business development. Most of [the company's] sales to distributors are made under specific agreements allowing for price protection and stock rotation for unsold merchandise."[6]

12.     Upon information and belief, based upon public information, Defendant STMicroelectronics, Inc. ("ST-Inc.") is a corporation organized and existing under the laws of Delaware with its principal place of business at 750 Canyon Drive, Suite 300, Coppell, Texas 75019.

13.     Upon public information and belief, Defendant ST-Inc. maintains an established place of business at 11809 Domain Drive, Suite 300, Austin, Texas 78758. See https://www.st.com/content/st_com/en/contact-us.html (last visited Oct. 21, 2025). ST-Inc. may be served through its registered agent CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

## JURISDICTION AND VENUE

14.     This civil action arises under the patent laws of the United States, 35 U.S.C. § 1 et seq., including without limitation 35 U.S.C. §§ 271, 281, 283, 284, and 285. Accordingly, this Court has subject matter jurisdiction under, inter alia, 28 U.S.C. §§ 1331 and 1338(a).

---

[4] Id. at 40.
[5] Id.
[6] Id.

3

15.     This Court has personal jurisdiction over Defendants. Defendants conduct business and have committed acts of patent infringement in this Judicial District, the State of Texas, and elsewhere in the United States.

16.     Plaintiff's causes of action arise, at least in part, from Defendants' contacts with and activities in this District and the State of Texas.

17.     Defendants have infringed the Asserted Patents within this District and the State of Texas by making, using, distributing, marketing, offering, and/or importing in or into this District and elsewhere in the State of Texas, products that infringe the Asserted Patents, including the Accused Products. Defendants, directly and through intermediaries, makes, uses, offers, imports, distributes, advertises, promotes, and/or otherwise commercializes such infringing products in or into this District and the State of Texas. Defendants regularly conduct and solicit business in, engage in other persistent courses of conduct in, and/or derive substantial revenue from goods and services provided to residents of this District and the State of Texas.

18.     This Court has personal jurisdiction over STNV under Federal Rule of Civil Procedure 4(k)(2), because Pacific Research sues STNV for patent infringement pursuant to 35 U.S.C. § 271, and STNV is a foreign corporation not subject to jurisdiction in any state's courts of general jurisdiction, and (iii) the exercise of personal jurisdiction over STNV satisfies due process.

19.     STNV, directly and/or through subsidiaries and agents (including distributors, retailers, and others) makes, imports, ships, distributes, offers for sale, sells, uses, and advertises (including offering products and services through its website, https://www.st.com, as well as retailers) its products and/or services in the United States, the State of Texas, and the Western District of Texas, including ST-INC, a company operating and transacting business in Texas.

20.     STNV, directly and/or through its subsidiaries and agents (including distributors, retailers, and others), has purposefully and voluntarily placed one or more of its infringing products, as

4

described below, into the stream of commerce throughout the United States with the expectation that the products will be purchased and used by customers in this District. These infringing products have been and continue to be purchased and used by customers in this District. STNV has committed acts of patent infringement within the State of Texas and, more particularly, within this District.

21.    This Court has personal jurisdiction over ST-Inc because it has committed acts within the District giving rise to this action and/or has established minimum contacts within the District such that exercise of jurisdiction comports with due process.

22.    This Court has personal jurisdiction over Defendants pursuant to TEX. CIV. PRAC. & REM. CODE § 17.041 et seq.

23.    Personal jurisdiction exists over Defendants because Defendants have minimum contacts with this forum as a result of business regularly conducted within this District and the State of Texas, and, on information and belief, specifically as a result of, at least, committing the tort of patent infringement within this District and the State of Texas.

24.    This Court also has personal jurisdiction over Defendants, in part, because Defendants maintain continuous and systematic business in this District, including by providing infringing products to the residents of this District that Defendants knew would be used within this District, and by soliciting business from the residents of this District.

25.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1400(b), because ST-Inc. has maintained established and regular places of business in this District, has transacted business in this District, and has committed acts of infringement from this District, including, but not limited to, the sale and use of the products identified below. Venue is proper because ST-Inc. conducts substantial business in this District and has committed acts of infringement here.

26.    Venue is also proper as to STNV which is organized under the laws of The Netherlands, under 28 U.S.C. § 1391(c)(3), which provides that "a defendant not resident in the United States may be

5

sued in any judicial district, and the joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants."

27.     Upon public information and belief, and as discussed above, ST-Inc. has physical facilities and employees in Texas, including an office at 11809 Domain Drive, Suite 300, Austin, Texas 78758.

28.     ST-Inc. is, and has been, registered to do business in the State of Texas (SOS File No. 0005910106) since August 4, 1983.

29.     ST-Inc. has previously not contested the propriety of venue in this District for patent infringement actions and has also admitted that it has facilities and employees located in this District. See MIMO Research, LLC v. STMicroelectronics, Inc., No. 6:22-cv-00668-ADA, Dkt. No. 14, at ¶ 10 (W.D. Tex. Sept. 1, 2022); Trustees of Purdue University v. STMicroelectronics, N.V., No. 6:21-cv-00727-ADA, Dkt. No. 21, at ¶ 14 (W.D. Tex. Oct. 11, 2021); Ocean Semiconductor LLC v. STMicroelectronics, Inc., No. 6:20-cv-01215-ADA-DTG, Dkt. No. 70, at ¶ 8 (W.D. Tex. Apr. 6, 2022).

## THE ASSERTED PATENTS

30.     On March 26, 2013, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,402,666 (the "'666 Patent") entitled "Magneto Meter Using Lorentz Force For Integrated Systems." A true and correct copy of the '666 Patent is attached hereto as Exhibit A.

31.     Pacific Research is the owner and assignee of all right, title, and interest in and to the '666 Patent, including the right to assert all causes of action arising under the '666 Patent and the right to sue and obtain any remedies for past, present, or future infringement.

32.     On March 17, 2015, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,981,560 (the "'560 Patent") entitled "Method And Structure of Sensors and MEMs Devices Using Vertical Mounting with Interconnections." A true and correct copy of the '560 Patent is attached hereto as Exhibit B.

6

33.　　Pacific Research is the owner and assignee of all right, title, and interest in and to the '560 Patent, including the right to assert all causes of action arising under the '560 Patent and the right to sue and obtain any remedies for past, present, or future infringement.

34.　　On August 7, 2012, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,236,577 (the "'577 Patent") entitled "Foundry Compatible Process For Manufacturing a Magneto Meter Using Lorentz Force For Integrated Systems." A true and correct copy of the '577 Patent is attached hereto as Exhibit C.

35.　　Pacific Research is the owner and assignee of all right, title, and interest in and to the '577 Patent, including the right to assert all causes of action arising under the '577 Patent and the right to sue and obtain any remedies for past, present, or future infringement.

36.　　On June 28, 2016, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,376,312 (the "'312 Patent") entitled "Method For Fabricating a Transducer Apparatus." A true and correct copy of the '312 Patent is attached hereto as Exhibit D.

37.　　Pacific Research is the owner and assignee of all right, title, and interest in and to the '312 Patent, including the right to assert all causes of action arising under the '312 Patent and the right to sue and obtain any remedies for past, present, or future infringement.

38.　　On March 12, 2013, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,395,252 (the "'252 Patent") entitled "Integrated MEMS and CMOS package and Method." A true and correct copy of the '252 Patent is attached hereto as Exhibit E.

39.　　Pacific Research is the owner and assignee of all right, title, and interest in and to the '252 Patent, including the right to assert all causes of action arising under the '252 Patent and the right to sue and obtain any remedies for past, present, or future infringement.

40.　　Pacific Research has at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the Asserted Patents.

7

**FACTUAL ALLEGATIONS**

41.     The Asserted Patents relate to innovative improvements to semiconductor packaging architectures for integrating MEMs devices and integrated circuits.

42.     On information and belief, each of Defendants' products identified herein, including the IIS2MDC, LIS2MDL, LSM303AGR, ISM303IS, and LSM6DSOX, among others, have been and continue to be made, imported, offered for sale, sold, and/or distributed within the United States, including through Defendants' authorized distributors. By way of example, STNV's website identifies authorized distributors that offer and ship these products into the United States:



*See* STMicroelectronics, *Contacts*, https://www.st.com/content/st_com/en/contact-us.html (last visited March 31, 2026).

43.     As an example, the ISM330IS 6 axis IMU product line is available for purchase in the United States, including but not limited to, through Defendants' website:

LEGAL\114527099\3



STMicroelectronics,    *https://estore.st.com/en/products/mems-and-sensors/inemo-inertial-modules/ism330is.html* (last visited March 31, 2026).

44.    As another example, the Defendants' iNEMO Inertial Module with embedded AI (LSM6DSOX) is available for purchase in the United States, including but not limited to through Defendants' website:



9

STMicroelectronics, *https://estore.st.com/en/products/mems-and-sensors/inemo-inertial-modules/lsm6dsox.html* (last visited March 31, 2026).

**COUNT ONE**
**INFRINGEMENT OF U.S. PATENT NO. 8,402,666**

45.    Pacific Research incorporates by reference the allegations set forth in Paragraphs 1-44 of the Complaint as though fully set forth herein.

46.    The claims of the '666 Patent are valid and enforceable.

47.    Defendants have and continue to directly infringe the '666 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States the Accused Products made using the patented methods including, but not limited to, products that satisfy each and every limitation of one or more claims of the '666 Patent. Upon information and belief, such products include at least the product lines of MEMS devices, including but not limited to: IISMDC, LIS2MDL and LSM303AGR.

48.    For example, the Accused Products incorporate and/or implement elements that are identical or equivalent to each claimed element of the patented invention pointed out by at least Claim 1 of the '666 Patent.

49.    Claim 1 of the '666 Patent recites:

An integrated electronic compass and circuit system comprising:
a semiconductor substrate;
one or more CMOS integrated circuits formed on one or more portions of the semiconductor substrate; and
an electronic compass device operably coupled to the one or more CMOS integrated circuits.
'666 Patent, Cl. 1.

50. For example, each of the accused products is an integrated compass and circuit system, such as Defendants IISMDC:





# IIS2MDC

## High-accuracy, ultra-low-power, 3-axis digital output magnetometer

Datasheet – production data

LGA-12 (2.0x2.0x0.7 mm)

### Description

The IIS2MDC is a high-accuracy, ultra-low-power 3-axis digital magnetic sensor.

The IIS2MDC has a magnetic field dynamic range up to ±50 gauss.

The IIS2MDC includes an $I^2C$ serial bus interface that supports standard, fast mode, fast mode plus, and high-speed (100 kHz, 400 kHz, 1 MHz, and 3.4 MHz) and an SPI serial standard interface.

The device can be configured to generate an interrupt signal for magnetic field detection.

The IIS2MDC is available in a plastic land grid array package (LGA) and is guaranteed to operate over an extended temperature range from -40 °C to +85 °C.

### Features

- 3 magnetic field channels
- Up to ±50 gauss magnetic dynamic range
- 16-bit data output
- SPI/$I^2C$ serial interfaces
- Analog supply voltage 1.71 V to 3.6 V
- Selectable power mode/resolution
- Single measurement mode up to 150 Hz
- Support for hard-iron compensation
- Programmable interrupt generator
- Embedded self-test
- Embedded temperature sensor
- ECOPACK®, RoHS and "Green" compliant

### Applications

- Anti-tampering in smart meters
- Positional and distance sensors
- Compasses for Inertial Measurement Unit (IMU)
- Presence detection, magnetic switches
- Variable magnetic field monitoring

**Table 1. Device summary**

| Part number | Temp. range [°C] | Package | Packaging |
|---|---|---|---|
| IIS2MDCTR | -40 to +85 | LGA-12 | Tape and reel |

*See* https://www.st.com/resource/en/datasheet/iis2mdc.pdf  (Last accessed April 7, 2026)

51. On information and belief, each of the Accused Products includes a semiconductor substrate.



Source: RE - optical image - decap (DCS_8874.JPG)

52.        On information and belief, each of the Accused Products includes one or more CMOS integrated circuits formed on one or more portions of the semiconductor substrate.



Source: RE - X-RAY - side view (1-1-X-C.jpeg)

Source: RE - SEM – decap (1-1-90 degrees-45 degreetilt.jpg)

53.        On information and belief, each of the Accused Products includes an electronic compass device operably coupled to the one or more CMOS integrated circuits.



54.     Pacific Research adopts, and incorporates by reference as if fully stated herein, the exemplary claim chart attached as Exhibit F, which describes and demonstrates how Defendants infringe at least claim 1 of the '666 Patent.

55.     Fact and expert discovery are expected to confirm that the Accused Products infringe the '666 Patent, for which further evidence may lie in whole or in part in technical documents to which Pacific Research does not presently have access.

56.     Further, on information and belief, Defendants have and continue to indirectly infringe one or more claims of the '666 Patent, including claim 1, under 35 U.S.C. § 271(b) without authority. Defendants have had actual knowledge of the '666 Patent and that the Accused Products infringed the '666 Patent, or was willfully blind to such infringement, as of the date that this original complaint in this action was served on Defendants. With specific intent to cause infringement by others, or while willfully blind to such infringement, Defendants have induced the direct infringement of the '666 Patent by third parties, including but not limited to, third-party semiconductor foundries, third party MEMS foundries, Defendants' distributors, other types of third-party manufacturers, customers, and/or end-users. Defendants' actions constituting inducement include, but are not limited to, contracting for the third-party manufacture of, and/or providing the Accused Products to direct infringers, thereby causing them to make,

use, offer to sell, sell, and/or import into the United States the Accused Products, either literally or under the doctrine of equivalents.

57.    Defendants, with knowledge that these products, and/or the manufacture thereof, infringe the '666 Patent as of the date that the original complaint in this action was served on Defendants, knowingly and intentionally induced, and continue to knowingly and intentionally induce direct infringement of the '666 Patent by contracting for the third-party manufacture of, and/or providing the Accused Products to direct infringers.

58.    As of the date that the original complaint in this action was served on Defendants, Defendants have induced infringement by others, including third-party semiconductor foundries, Defendants' distributors, other types of third-party manufacturers, customers, and/or end-users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others infringe the '666 Patent, but while remaining willfully blind to the infringement.

59.    Defendants have and continue to infringe one or more claims of the '666 Patent by importing into the United States or offering to sell, selling, or using within the United States a product which is made by a process patented in the United States.

60.    Defendants are not licensed or otherwise authorized to practice the claims of the '666 Patent.

61.    Thus, by its acts, Defendants have injured Pacific Research and are liable to Pacific Research for directly and/or indirectly infringing one or more claims of the '666 Patent, whether literally or under the doctrine of equivalents, including without limitation claim 1.

62.    As a result of Defendants' infringement of the '666 Patent, Pacific Research has suffered monetary damages, and seeks recovery, in an amount to be proven at trial, adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty with interest and costs.

## COUNT TWO
## INFRINGEMENT OF U.S. PATENT 8,981,560

63.    Pacific Research incorporates by reference the allegations set forth in Paragraphs 1-44 of the Complaint as though fully set forth herein.

64.    The claims of the '560 Patent are valid and enforceable.

65.    Defendants have and continue to directly infringe the '560 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States the Accused Products, including products made using the patented methods including, but not limited to, products that satisfy each and every limitation of one or more claims of the '560 Patent. Upon information and belief, such products include at least the STMicro IIS2MDC, LIS2MDL, LSM303AGR and all other similar MEMs products.

66.    For example, the Accused Products incorporates and/or implements elements that are identical or equivalent to each claimed element of the patented invention pointed out by at least Claim 1 of the '560 Patent.

67.    Claim 1 of the '560 Patent recites:

An integrated sensor device or electronic device, the device comprising:

a substrate member having a first surface region, the substrate member having at least one contact region;

at least one singulated integrated sensor or electronic device each coupled to a die member, each die member having a singulated surface region and at least one contact region, the singulated surface region(s) being coupled to the first surface region;

at least one first conductive material formed overlying at least the contact region(s) of the singulated integrated sensor or electronic device; and

at least one second conductive material formed overlying at least a portion of the first conductive material(s).

'560 Patent, Cl. 1.

68.    For example, each of the accused products is an integrated sensor or electronic device, such as Defendants LSM303AGR:

**Description**

The LSM303AGR is an ultralow-power high-performance system-in-package featuring a 3-axis digital linear acceleration sensor and a 3-axis digital magnetic sensor.

The LSM303AGR has linear acceleration full scales of ±2g/±4g/±8g/±16g and a magnetic field dynamic range of ±50 gauss.

The LSM303AGR includes an I²C serial bus interface that supports standard, fast mode, fast mode plus, and high-speed (100 kHz, 400 kHz, 1 MHz, and 3.4 MHz) and an SPI serial standard interface.

The system can be configured to generate an interrupt signal for free-fall, motion detection, and magnetic field detection.

The magnetic and accelerometer blocks can be enabled or put into power-down mode separately.

The LSM303AGR is available in a plastic land grid array package (LGA) and is guaranteed to operate over an extended temperature range from -40 °C to +85 °C.

*See* https://www.st.com/en/mems-and-sensors/lsm303agr.html#overview (Last accessed April 1, 2026)

69.    On information and belief, the Accused Products include a substrate member having a first surface region, the substrate member having at least one contact region.



Source: RE - SEM - decap - angled top view

70.    On information and belief, the Accused Products include at least one singulated integrated sensor or electronic device each coupled to a die member, each die member having a singulated surface region and at least one contact region, the singulated surface region(s) being coupled to the first surface region.



Source: RE - SEM - decap - angled top view

71.    On information and belief, the Accused Products include at least one first conductive material formed overlying at least the contact region(s) of the singulated integrated sensor or electronic device.



Source: RE - SEM - decap - angled top view

72.    On information and belief, the Accused Products include at least one second conductive material formed overlying at least a portion of the first conductive material(s).



Source: RE - SEM - decap - angled top view

73.     Pacific Research adopts, and incorporates by reference as if fully stated herein, the exemplary claim chart attached as Exhibit G, which describes and demonstrates how Defendants infringe at least claim 1 of the '560 Patent.

74.     Fact and expert discovery are expected to confirm that the Accused Products infringe the '560 Patent, for which further evidence may lie in whole or in part in technical documents to which Pacific Research does not presently have access.

75.     Further, on information and belief, Defendants have and continue to indirectly infringe one or more claims of the '560 Patent, including claim 1, by inducing infringement under 35 U.S.C. § 271(b) without authority. Defendants have had knowledge of the '560 Patent and that its Accused Products infringe as of the date that the original complaint in this action was served on Defendants. Defendants, with specific intent to cause infringement, knowingly and intentionally induce others, including third-party semiconductor or MEMs foundries, Defendants' distributors, other types of third-party manufacturers, customers, and/or end-users (the "Third-Party Infringers") to directly infringe the '560 Patent, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States the Accused Products. Defendants have induced infringement by contracting for the third-party manufacture of, and/or providing the Accused Products

to the Third-Party Infringers. Defendants had the intent to cause infringing acts by others or, in the alternative, acted with willful blindness to the infringement by others.

76.     Defendants, with knowledge that these products, and/or the manufacture thereof, infringe the '560 Patent as of the date that the original complaint in this action was served on Defendants, knowingly and intentionally induced, and continue to knowingly and intentionally induce direct infringement of the '560 Patent by contracting for the third-party manufacture of, and/or providing the Accused Products to direct infringers.

77.     As of the date that the original complaint in this action was served on Defendants, Defendants have induced infringement by others, including third-party semiconductor foundries, Defendants' distributors, other types of third-party manufacturers, customers, and/or end-users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others infringe the '560 Patent, but while remaining willfully blind to the infringement.

78.     Defendants are not licensed or otherwise authorized to practice the claims of the '560 Patent.

79.     Thus, by its acts, Defendants have injured Pacific Research and are liable to Pacific Research for directly and/or indirectly infringing one or more claims of the '560 Patent, whether literally or under the doctrine of equivalents, including without limitation claim 1.

80.     As a result of Defendants' infringement of the '560 Patent, Pacific Research has suffered monetary damages, and seeks recovery, in an amount to be proven at trial, adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty with interest and costs.

### COUNT THREE
### INFRINGEMENT OF US PATENT 8,236,577

81.     Pacific Research incorporates by reference the allegations set forth in Paragraphs 1-44 of the Complaint as though fully set forth herein.

82. The claims of the '577 Patent are valid and enforceable.

83. Defendants have and continue to directly infringe the '577 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States the Accused Products made using the patented methods including, but not limited to, products that satisfy each and every limitation of one or more claims of the '577 Patent. Upon information and belief, such products

84. include at least the product lines of MEMS devices, including but not limited to: IISMDC, LIS2MDL, LSM303AGR and all similar MEMs products.

85. For example, the Accused Products incorporates and/or implements elements that are identical or equivalent to each claimed element of the patented invention pointed out by at least Claim 1 of the '577 Patent.

86. Claim 1 of the '577 Patent recites:

> A method of fabricating an integrated electronic compass and circuit device comprising:
>
> providing a semiconductor substrate comprising a surface region;
>
> forming one or more CMOS integrated circuits formed on one or more portions of the semiconductor substrate;
>
> forming a thickness of dielectric material overlying the one or more CMOS integrated circuits;
>
> joining a substrate overlying the thickness of dielectric material;
>
> thinning the substrate to a predetermined thickness; and
>
> forming an electronic compass device within one or more regions of the predetermined thickness of the substrate.

'577 Patent, Cl. 1.

87. For example, the Defendants' LSM303AGR family is a system in package The LSM303AGR is an ultralow-power high performance system-in-package featuring a 3-axis digital linear acceleration sensor and a 3-axis digital magnetic sensor. The LSM303AGR includes an I²C

serial bus interface that supports standard, fast mode, fast mode plus, and high-speed (100 kHz, 400 kHz, 1 MHz, and 3.4 MHz) and an SPI serial standard interface. The system can be configured to generate an interrupt signal for free-fall, motion detection, and magnetic field detection. The LSM303AGR is available in a plastic land grid array package (LGA) and is guaranteed to operate over an extended temperature range from -40 °C to +85 °C. Source: https://www.st.com/resource/en/datasheet/lsm303agr.pdf.

88.    On information and belief, the Accused Products are formed via a method including providing a semiconductor substrate comprising a surface region.



Source: RE - X Ray - side view

89.     On information and belief, the Accused Products are formed via a method of forming one or more CMOS integrated circuits formed on one or more portions of the semiconductor substrate.



Source: RE - optical image - decap - top view

90.     On information and belief, the Accused Products are formed via a method of forming a thickness of dielectric material overlying the one or more CMOS integrated circuits.



Source: RE - SEM - decap - cross section - side view

91.     On information and belief, the Accused Products are formed via a method including joining a substrate overlying the thickness of dielectric material and thinning the substrate to a predetermined thickness.



Source: RE - X Ray - side view

92.     On information and belief, the Accused Products are formed via a method including forming an electronic compass device within one or more regions of the predetermined thickness of the substrate.



93.     Pacific Research adopts, and incorporates by reference as if fully stated herein, the exemplary claim chart attached as Exhibit H, which describes and demonstrates how Defendants infringe at least claim 1 of the '577 Patent.

94.     Fact and expert discovery are expected to confirm that the Accused Products infringe the '577 Patent, for which further evidence may lie in whole or in part in technical documents to which Pacific Research does not presently have access.

95.     Further, on information and belief, Defendants have and continue to indirectly infringe one or more claims of the '577 Patent, including claim 1, by inducing infringement under 35 U.S.C. § 271(b) without authority. Defendants have had knowledge of the '577 Patent and that its Accused Products infringe as of the date that the original complaint in this action was served on Defendants. Defendants, with specific intent to cause infringement, knowingly and intentionally induce others, including third-party semiconductor foundries, Defendants' distributors, other types of third-party manufacturers, customers, and/or end-users (the "Third-Party Infringers") to directly infringe the '577 Patent, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States the Accused Products. Defendants have induced infringement by contracting for the third-party manufacture of, and/or providing the Accused Products to the Third-Party Infringers. Defendants had the intent to cause infringing acts by others or, in the alternative, acted with willful blindness to the infringement by others.

96.     Defendants, with knowledge that these products, and/or the manufacture thereof, infringe the '577 Patent as of the date that the original complaint in this action was served on Defendants, knowingly and intentionally induced, and continue to knowingly and intentionally induce direct infringement of the '577 Patent by contracting for the third-party manufacture of, and/or providing the Accused Products to direct infringers.

97. As of the date that the original complaint in this action was served on Defendants, Defendants have induced infringement by others, including third-party semiconductor foundries, Defendants' distributors, other types of third-party manufacturers, customers, and/or end-users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others infringe the '577 Patent, but while remaining willfully blind to the infringement.

98. Defendants are not licensed or otherwise authorized to practice the claims of the '577 Patent.

99. Thus, by its acts, Defendants have injured Pacific Research and are liable to Pacific Research for directly and/or indirectly infringing one or more claims of the '577 Patent, whether literally or under the doctrine of equivalents, including without limitation claim 1.

100. As a result of Defendants' infringement of the '577 Patent, Pacific Research has suffered monetary damages, and seeks recovery, in an amount to be proven at trial, adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty with interest and costs.

## COUNT FOUR
## INFRINGEMENT OF U.S. PATENT 9,376,312

101. Pacific Research incorporates by reference the allegations set forth in Paragraphs 1-44 of the Complaint as though fully set forth herein.

102. The claims of the '312 Patent are valid and enforceable.

103. Defendants have and continue to directly infringe the '312 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States the Accused Products made using the patented methods including, but not limited to, products that satisfy each and every limitation of one or more claims of the '312 Patent. Upon information and belief, such products include at least the LSM303AGR and all other products that are not fabricated in a materially different manner.

104.    For example, the Accused Products incorporates and/or implements elements that are identical or equivalent to each claimed element of the patented invention pointed out by at least Claim 1 of the '312 Patent.

105.    Claim 1 of the '312 Patent recites:

A method of fabricating a transducer apparatus, the method comprising:

providing a substrate member having a surface region;

forming a movable base structure having a base surface region;

removing at least one portion of the movable base structure to form a center cavity with a cavity surface region;

forming at least one center anchor structure spatially disposed within a substantially circular portion of the surface region, the at least one center anchor structure(s) being configured within a vicinity of a center of the surface region that is within the center cavity;

forming at least one spring structure coupled to at least one portion of the cavity surface region, the at least one spring structure being coupled to the at least one center anchor structure; and

forming at least one capacitor element, the at least one capacitor element being spatially disposed within a vicinity of the cavity surface region.

'312 Patent, Cl. 1.

106.    For example, the Defendants' LSM303AGR, includes a semiconductor device that implements the claimed method. The LSM303AGR is an ultralow-power high performance system-in-package featuring a 3-axis digital linear acceleration sensor and a 3-axis digital magnetic sensor. The LSM303AGR includes an I²C serial bus interface that supports standard, fast mode, fast mode plus, and high-speed (100 kHz, 400 kHz, 1 MHz, and 3.4 MHz) and an SPI serial standard interface. The system can be configured to generate an interrupt signal for free-fall, motion detection, and magnetic field detection. The LSM303AGR is available in a plastic land grid array package (LGA) and is guaranteed to operate over an extended temperature range from -40 °C to +85 °C. Source: https://www.st.com/resource/en/datasheet/lsm303agr.pdf

107.    On information and belief, the Accused Products are manufactured using a process that provides a substrate member having a surface region.



*Source: RE - optical image - top view*

108.    On information and belief, the Accused Products are manufactured using a process that forms a movable base structure having a base surface region.



*Source: RE - optical image - top view*

109.    On information and belief, the Accused Products are manufactured using a process that removes at least one portion of the movable base structure to form a center cavity with a cavity surface region.



Source: RE - SEM images - cross section - side view

110.    On information and belief, the Accused Products are manufactured using a process that forms at least one center anchor structure spatially disposed within a substantially circular portion of the surface region, the at least one center anchor structure(s) being configured within a vicinity of a center of the surface region that is within the center cavity.



Source: RE - SEM images - decap - top view



Source: RE - SEM images - cross section - side view

111.    On information and belief, the Accused Products are manufactured using a process that forms at least one spring structure coupled to at least one portion of the cavity surface region, the at least one spring structure being coupled to the at least one center anchor structure.



Source: RE - SEM images - decap - top view



Source: RE - SEM images - cross section - side view

112.    On information and belief, the Accused Products are manufactured using a process that forms at least one capacitor element, the at least one capacitor element being spatially disposed within a vicinity of the cavity surface region.



Source: RE - SEM images - decap - top view



Source: RE - SEM images - cross section - side view

113.    Pacific Research adopts, and incorporates by reference as if fully stated herein, the exemplary claim chart attached as Exhibit I, which describes and demonstrates how Defendants infringe at least claim 1 of the '312 Patent.

114.    Fact and expert discovery are expected to confirm that the Accused Products infringe the '312 Patent, for which further evidence may lie in whole or in part in technical documents to which Pacific Research does not presently have access.

115.    Further, on information and belief, Defendants have and continue to indirectly infringe one or more claims of the '312 Patent, including claim 1, by inducing infringement under 35 U.S.C. § 271(b) without authority. Defendants have had knowledge of the '312 Patent and that its Accused Products infringe as of the date that the original complaint in this action was served on Defendants.

Defendants, with specific intent to cause infringement, knowingly and intentionally induce others, including third-party semiconductor foundries, Defendants' distributors, other types of third-party manufacturers, customers, and/or end-users (the "Third-Party Infringers") to directly infringe the '312 Patent, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States the Accused Products. Defendants have induced infringement by contracting for the third-party manufacture of, and/or providing the Accused Products to the Third-Party Infringers. Defendants had the intent to cause infringing acts by others or, in the alternative, acted with willful blindness to the infringement by others.

116. Defendants, with knowledge that these products, and/or the manufacture thereof, infringe the '312 Patent as of the date that the original complaint in this action was served on Defendants, knowingly and intentionally induced, and continue to knowingly and intentionally induce direct infringement of the '312 Patent by contracting for the third-party manufacture of, and/or providing the Accused Products to direct infringers.

117. As of the date that the original complaint in this action was served on Defendants, Defendants have induced infringement by others, including third-party semiconductor foundries, Defendants' distributors, other types of third-party manufacturers, customers, and/or end-users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others infringe the '312 Patent, but while remaining willfully blind to the infringement.

118. Defendants have and continue to infringe one or more claims of the '312 Patent by importing into the United States or offering to sell, selling, or using within the United States a product which is made by a process patented in the United States.

119. Defendants are not licensed or otherwise authorized to practice the claims of the '312 Patent.

120. Thus, by its acts, Defendants have injured Pacific Research and are liable to Pacific Research for directly and/or indirectly infringing one or more claims of the '312 Patent, whether literally or under the doctrine of equivalents, including without limitation claim 1.

121. As a result of Defendants' infringement of the '312 Patent, Pacific Research has suffered monetary damages, and seeks recovery, in an amount to be proven at trial, adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty with interest and costs.

## COUNT FIVE
## INFRINGEMENT OF U.S. PATENT 8,395,252

122. Pacific Research incorporates by reference the allegations set forth in Paragraphs 1-44 of the Complaint as though fully set forth herein.

123. The claims of the '252 Patent are valid and enforceable.

124. Defendants have and continue to directly infringe the '252 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States the Accused Products which incorporate the patented methods including, but not limited to, products that satisfy each and every limitation of one or more claims of the '252 Patent. Upon information and belief, such products include at least the Defendants' LSM6DSOX product line and all other products with an apparatus for packaging MEMS structures that are not materially different.

125. For example, the Accused Products incorporates and/or implements elements that are identical or equivalent to each claimed element of the patented invention pointed out by at least Claim 1 of the '252 Patent.

126. Claim 1 of the '252 Patent recites:

An apparatus for packaging micro electro-mechanical systems (MEMS) and integrated circuits (ICs), the apparatus comprising:

a substrate member having a surface region;

a semiconductor substrate comprising one or more integrated circuits thereon, the semiconductor substrate being bonded to a portion of the surface region and having an upper surface region;

one or more MEMS devices overlying an inner region of the upper surface region; an enclosure housing the one or more MEMS devices and configured overlying a first outer region of the upper surface region, the enclosure housing having an upper cover region; and

one or more bonding structures, each of the bonding structures having a bonding pad within a vicinity of the upper cover region and provided within a second outer region of the upper surface region,

wherein the second outer region is characterized by a width of about 100 microns and less, and wherein the first outer region is characterized by a width of about 200 microns and less.

'252 Patent, Cl. 1.

127. For example, Defendants' LSM6DSOX includes apparatus for packaging micro electro-mechanical systems (MEMS) and integrated circuits. The LSM6DSOX is a 6-axis IMU (inertial measurement unit) system-in-package featuring a 3-axis digital accelerometer and a 3-axis digital gyroscope, boosting performance at 0.55 mA in high-performance mode and enabling always-on low power features for an optimal motion experience for the consumer. The LSM6DSOX fully supports EIS and OIS applications as the module includes a dedicated configurable signal processing path for the OIS and auxiliary SPI, configurable for both the gyroscope and accelerometer. The LSM6DSOX OIS can be configured from the auxiliary SPI and primary interface (SPI / I²C & MIPI I3CSM). High robustness to mechanical shock makes the LSM6DSOX the preferred choice of system designers for the creation and manufacturing of reliable products. The LSM6DSOX is available in a plastic, land grid array (LGA) package. Source: https://www.st.com/resource/en/datasheet/lsm6dsox.pdf.

128. On information and belief, the Accused Products include a substrate member having a surface region.



*Source: RE - optical image - angled top view*

129.    On information and belief, the Accused Products include a semiconductor substrate comprising one or more integrated circuits thereon, the semiconductor substrate being bonded to a portion of the surface region and having an upper surface region.



*Source: RE - optical image - angled top view*

130.    On information and belief, the Accused Products include one or more MEMS devices overlying an inner region of the upper surface region; an enclosure housing the one or more MEMS devices and configured overlying a first outer region of the upper surface region, the enclosure housing having an upper cover region.



*Source: RE - optical image - decap - top image*





*Source: RE - optical image - decap - top image*

131. On information and belief, the Accused Products one or more bonding structures, each of the bonding structures having a bonding pad within a vicinity of the upper cover region and provided within a second outer region of the upper surface region.



Source: RE - optical Image - decap - top image



Source: RE - optical Image - decap - top image

132. On information and belief, the Accused Products include that the second outer region is characterized by a width of about 100 microns and less, and wherein the first outer region is characterized by a width of about 200 microns and less.



Source: RE - optical image - decap - top image

133.    Pacific Research adopts, and incorporates by reference as if fully stated herein, the exemplary claim chart attached as Exhibit J, which describes and demonstrates how Defendants infringe at least claim 1 of the '252 Patent.

134.    Fact and expert discovery are expected to confirm that the Accused Products infringe the '252 Patent, for which further evidence may lie in whole or in part in technical documents to which Pacific Research does not presently have access.

135.    Further, on information and belief, Defendants have and continue to indirectly infringe one or more claims of the '252 Patent, including claim 1, by inducing infringement under 35 U.S.C. § 271(b) without authority. Defendants have had knowledge of the '252 Patent and that its Accused Products infringe as of the date that the original complaint in this action was served on Defendants. Defendants, with specific intent to cause infringement, knowingly and intentionally induce others, including third-party semiconductor foundries, Defendants' distributors, other types of third-party manufacturers, customers, and/or end-users (the "Third-Party Infringers") to directly infringe the '252 Patent, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States the Accused Products. Defendants have induced infringement by contracting for the third-party manufacture of, and/or providing the Accused Products to the Third-Party Infringers. Defendants had the intent to cause infringing acts by others or, in the alternative, acted with willful blindness to the infringement by others.

136.    Defendants, with knowledge that these products, and/or the manufacture thereof, infringe the '252 Patent as of the date that the original complaint in this action was served on Defendants, knowingly and intentionally induced, and continue to knowingly and intentionally induce direct infringement of the '252 Patent by contracting for the third-party manufacture of, and/or providing the Accused Products to direct infringers.

137.    As of the date that the original complaint in this action was served on Defendants, Defendants have induced infringement by others, including third-party semiconductor foundries, Defendants' distributors, other types of third-party manufacturers, customers, and/or end-users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others infringe the '252 Patent, but while remaining willfully blind to the infringement.

138.    Defendants have and continue to infringe one or more claims of the '252 Patent by importing into the United States or offering to sell, selling, or using within the United States the accused products.

139.    Defendants are not licensed or otherwise authorized to practice the claims of the '252 Patent.

140.    Thus, by its acts, Defendants have injured Pacific Research and are liable to Pacific Research for directly and/or indirectly infringing one or more claims of the '252 Patent, whether literally or under the doctrine of equivalents, including without limitation claim 1.

141.    As a result of Defendants' infringement of the '252 Patent, Pacific Research has suffered monetary damages, and seeks recovery, in an amount to be proven at trial, adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty with interest and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment and seeks relief from Defendants as follows:

a.    For judgment that Defendants have infringed and continue to infringe the claims of the '666, '560, '577, '312, and '252 Patents;

b.    For an accounting of all damages sustained by Plaintiff as a result of Defendants' acts of infringement;

c.    For a mandatory future royalty payable by Defendants in relation to each sale of an Accused Product that is found to infringe one or more of the Asserted Patents and all future products which are not materially different from products found to infringe;

d.    That the Court determine that Defendants' infringements were willful;

e.      For a judgment and order requiring Defendants to pay Plaintiff's damages, costs, expenses, and pre- and post-judgment interest for its infringement of the '666, '560, '577, '312, and '252 Patents as provided under 35 U.S.C. § 284;

f.      For a judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiff its reasonable attorneys' fees; and

g.      For such other and further relief in law and in equity as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action for all issues triable by a jury.

Dated: April 7, 2026                    Respectfully Submitted,

                                        */s/ Bradley D. Liddle*
                                        Bradley D. Liddle
                                        Texas State Bar No. 24074599
                                        Michael C. Pomeroy
                                        Texas Bar State Bar No. 24098952
                                        bliddle@cozen.com
                                        mpomeroy@cozen.com
                                        COZEN O'CONNOR
                                        1717 Main Street, Suite 3100
                                        Dallas, Texas 75201
                                        Telephone: (214) 462-3139
                                        Fax: (972) 755-1742

                                        **ATTORNEYS FOR PLAINTIFF PACIFIC
                                        RESEARCH TECHNOLOGIES, PTE. LTD**